_____ FILED      _____ ENTERED
_____ LODGED   _____ RECEIVED

SG   JUL 23 2018

AT SEATTLE
CLERK U.S. DISTRICT COURT
BY   WESTERN DISTRICT OF WASHINGTON
                                              DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON**

**18 CV-01080** RSL

LEE ROUSSO,

          Plaintiff, *pro se,*

    vs.

KING COUNTY, PATRICK HINDS,
MARK LARSON, DANIEL
SATTERBERG, and JANE DOES AND
JOHN DOES 1-100.

          Defendants.

Case No.

**COMPLAINT
(JURY DEMAND)**

Plaintiff Lee Rousso, appearing *pro se*, alleges as follows by way of Complaint.

**I. PARTIES**

1.1    Plaintiff Lee Rousso is a natural person and a former criminal defense attorney residing in the Western District of Washington.

1.2    Defendant King County is a government entity formed under Revised Code of Washington Title 36.  King County operates a criminal enterprise known as The King County Superior Court.  The King County Superior Court is a "criminal enterprise" because, during the period described by this lawsuit, The King Count Superior Court was not operating for the benefit and protection of the citizens of Washington State, but was instead maintained for the

COMPLAINT- 1

**LEE ROUSSO**
5306 NE 11ᵀᴴ COURT
RENTON, WASHINGTON 98059
TELEPHONE: (425)457-3314

sole benefit, protection and pleasure of a Convicted Felon and Delusional Psychopath named Jacob Stone.

Defendant King County was served with a tort claim as required by state law, and more than sixty days have passed since service of that tort claim.

1.3    Defendant Patrick Hinds is a King County Government Lawyer.  While nominally a "prosecutor," Hinds was not advocating on behalf of the citizens of Washington State during the events that led to this lawsuit.  Instead, King County Government Lawyer Patrick Hinds was actively conspiring with Convicted Felon and Delusional Psychopath Jacob Stone, and others, to defraud the citizens of this state out of a jury verdict.  At the same time, Patrick Hinds was conspiring with Convicted Felon and Delusional Psychopath Jacob Stone, and others, to destroy the career of this former criminal defense attorney.

1.4    Defendant Mark Larson is a King County Government Lawyer.  While nominally a "prosecutor," Larson was not advocating on behalf of the citizens of Washington State during the events that led to this lawsuit.  Instead, King County Government Lawyer Mark Larson was actively conspiring with Convicted Felon and Delusional Psychopath Jacob Stone, and others, to defraud the citizens of this state out of a jury verdict.  At the same time, Mark Larson was conspiring with Convicted Felon and Delusional Psychopath Jacob Stone, and others, to destroy the career of this former criminal defense attorney.

1.5    Defendant Daniel Satterberg is a King County Government Lawyer.  While nominally a "prosecutor," Satterberg was not advocating on behalf of the citizens of Washington State during the events that led to this lawsuit.  Instead, King County Government Lawyer Daniel Satterberg was actively conspiring with Convicted Felon and Delusional Psychopath Jacob Stone, and others, to defraud the citizens of this state out of a jury verdict.  At the same time,

COMPLAINT- 2

Daniel Satterberg was conspiring with Convicted Felon and Delusional Psychopath Jacob Stone, and others, to destroy the career of this former criminal defense attorney.

1.6     Because they were working *for* Delusional Psychopath Jacob Stone and *against* the citizens of Washington State, King County Government Lawyers Patrick Hinds, Mark Larson and Daniel Satterberg are referred to collectively herein as "The Three Fake Prosecutors."

1.7     Defendants Jane Does and John Does 1-100 are King County Government Lawyers who have aided and abetted, or conspired with, Jacob Stone and The Three Fake Prosecutors for the purpose of defrauding the citizens of Washington State out of a jury verdict, or who have aided and abetted, or conspired with, Jacob Stone and The Three Fake Prosecutors for the purpose of destroying this former criminal defense attorney's career.

## II.     JURISDICTION AND VENUE

2.1     This Court has subject matter jurisdiction under 28 U.S.C. §1331, Federal Question, as this Complaint alleges violations of federal statutes and the Constitution of the United States of America.

2.2     Venue is proper in the Western District of Washington as all defendants reside in this district and the defendants' tortious acts all occurred herein.

## III.     FACTS

3.1     On December 11, 2010, at approximately 2:55 a.m., Delusional Psychopath and not-very-good citizen Jacob Stone was driving his Geo Metro on I-405 between Tukwila and Renton. *Exhibit A to Complaint, Information and Certification for Probable Cause, State v. Stone, KCSC Cause No. 10-1-09798-4.*

COMPLAINT- 3

LEE ROUSSO
5306 NE 11TH COURT
RENTON, WASHINGTON 98059
TELEPHONE: (425)457-3314

3.2     In response to some imagined provocation, Stone pulled out his loaded Glock pistol and fired three shots at the car right in front of him.  As he fired these shots, Washington State Patrol Trooper Jeffrey Laueger observed from just a few feet away.

3.3     Trooper Laueger pulled his fully marked patrol car in behind Stone's vehicle and he activated the siren and emergency lights.  However, Jacob Stone did not pull over to the side of the road as required by law.  Instead, he threw his gun, later recovered, out the passenger side window of his car as he exited on to State Highway 167 southbound.

3.4     Stone accelerated to 115 MPH as he fled the scene, which was presumably the maximum speed his car could achieve.  Stone exited the highway at Central Avenue/84th Avenue South in Kent, then he raced up Kent's East Hill before he abandoned his car, leaving behind two pit bulls, a jar of then-still-illegal marijuana, and a passenger who appeared to be having a heart attack.

3.5     Based on these actions, the King County Prosecuting Attorney's Office ("KCPAO")[1] charged Jacob Stone with Drive-by Shooting and Attempting to Elude a Police Officer, with a special allegation that Stone had endangered someone other than himself and the police, *i.e.*, his passenger.

3.6     Stone hired gun rights attorney Mark Knapp to babysit the case for a year and a half before he decided to hire an actual criminal defense attorney.

3.7     In August, 2012, Jacob Stone hired this plaintiff because of his outstanding trial record and his willingness to try "impossible" cases.  Further, Stone was highly motivated to go to trial as any plea would have resulted in a loss of his gun rights.  Preserving his gun rights was

---

[1] Also known as Dan Satterberg's Arrogant Army of Asinine Assassins.

COMPLAINT- 4

LEE ROUSSO
5306 NE 11TH COURT
RENTON, WASHINGTON 98059
TELEPHONE: (425)457-3314

his number one priority at the time, a fact that surely explains why Jacob Stone should never have guns.

3.8    Prior to trial, King County Government Lawyer Patrick Hinds informed this plaintiff that the Stone case was "very important" to the KCPAO and could not be resolved with misdemeanors.  Thus, the State's best and final pretrial offer was Plead Guilty As Charged with an agreed recommendation as to sentencing.

3.9    In January, 2013, *State v. Stone* was called to trial by King County Government Lawyer Leroy McCullough, who was wearing the black robes of a King County Superior Court Judge at the time.

3.10    Present at the *Stone* trial were this plaintiff, Delusional Psychopath Jacob Stone, and King County Government Lawyers Leroy McCullough and Patrick Hinds.

3.11    Although this plaintiff was not aware of it at the time, *State v. Stone* was a Show Trial. In fact, *State v. Stone* was a Show Trial, but one with a twist.

3.12    The typical Show Trial is one where the outcome is known in advance to everyone except the defendant, and the trial is presented solely to create the impression that the defendant actually had a chance of winning.

3.13    The twist on the Jacob Stone Show Trial is that the Show Trial was not prearranged to screw over the defendant, but was instead prearranged to screw over the jury and, by extension, the 7.4 million citizens of Washington State.

3.14    Based on overwhelming evidence of Jacob Stone's guilt, including his own highly incriminating testimony wherein he admitted to committing the crimes, the jury found Jacob Stone guilty of both Drive-by Shooting and Attempting to Elude a Police Officer. *Exhibit B to this Complaint, Verdicts in State v. Stone.*

COMPLAINT- 5

3.15    In spite of being convicted of two felonies, Jacob Stone has not served any prison time for the Drive-by Shooting and he still owes the citizens of this state a prison term of 27 months behind bars.  A convicted felon cannot avoid prison without help, a lot of it, from corrupt government lawyers, including in this case Leroy McCullough and The Three Fake Prosecutors.

3.16    Shortly after his conviction, but before sentencing, Delusional Psychopath Jacob Stone hired Professional Backstabbers Neil Fox and Lenell Nussbaum to do Fake Legal Work for him.  Fake, but effective, thanks to the massive corruption of the King County Government Lawyers working the Jacob Stone case.

3.17    Delusional Psychopath Jacob Stone and Professional Backstabbers Neil Fox and Lenell Nussbaum are the founding members of the Jacob Stone Conspiracy, a criminal enterprise devoted to defrauding the citizens of this state out of a jury verdict and, also, to destroying the career of this former criminal defense attorney.  The Jacob Stone Conspiracy is also famously known as "The Jacob Stone Crazy Train" and "The Arm Angle Army."[2]

3.18    For purposes of this Complaint it is alleged that the stolen verdict was worth at least $27 million, as there are many people in this world who would pay at least a million dollars to avoid a month in prison.  In other words, this is not merely a case of Government Lawyers stealing their paychecks, although it certainly features plenty of that.  It is also noted that Jacob Stone received a tremendous bargain as he paid only $175,000.00, or $216.00 per day, to avoid 27 months of prison.  Jacob Stone is a very frugal shopper!

---

[2] Neil Fox and Jacob Stone are proudly knows as the Arm Angle Einstein and Arm Angle Eisenhower, respectively.

COMPLAINT- 6

LEE ROUSSO
5306 NE 11TH COURT
RENTON, WASHINGTON 98059
TELEPHONE: (425)457-3314

3.19    King County Government Lawyer Leroy McCullough, wearing the black robes of a superior court judge, officially joined the Jacob Stone Conspiracy on October 4, 2013, when he issued an order vacating the Drive-by Shooting conviction and ordering a new trial on that charge.   *Exhibit C to this Complaint, Order Vacating Drive-by Shooting Conviction and Ordering New Trial, State v. Stone.*

3.20    King County Government Lawyer Leroy McCullough's decision to vacate the Drive-by Shooting conviction was so wrong and so *bizarre* that this plaintiff could spend 100 pages dissecting its insanity.  Could, but won't.

3.21    A trial judge has a very limited role in our legal system.  That limitation is found in Article 4, Section 16, of the Washington State Constitution, which states that "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law."

3.22    Under Article 4, Section 16, the role of a trial judge in a criminal case is strictly limited to 1) determining the *admissibility* of evidence and 2) reading the jury instructions.  That's it!  That is all a judge is allowed by law to do, but Leroy McCullough did much, much more, all of it bad and all of it illegal.

3.23    Article 4, Section 16 specifically bars a judge from substituting his judgement for that of the jury, and yet that is exactly what happened here.  For reasons known only to God, Satan, and Leroy McCullough, McCullough substituted his own judgement for that of the jury.[3]   This action was completely illegal and, once again, incredibly bizarre given the

---

[3] King County District Court Judge Victoria Seitz once told this plaintiff, "I may not always agree with the verdict, but I will always enforce it."  That is apparently not the case in the King County Superior Court, where enforcement of verdicts appears to be optional, discretionary and for sale.

COMPLAINT- 7

LEE ROUSSO
5306 NE 11TH COURT
RENTON, WASHINGTON 98059
TELEPHONE: (425)457-3314

evidence presented at trial. One is certainly left to wonder: "What trial was Leroy McCullough watching, anyhow?"

3.24    In theory, the damage done to the integrity of our criminal justice system by Leroy McCullough should have been only temporary. After all, McCullough had ORDERED a second trial, the second trial would by definition have ended in a conviction, and Jacob Stone would have gone to prison for the Drive-by Shooting he committed.

3.25    The reason that the damage done by Judge McCullough's insane overreaching should have been only temporary is that we have what is called an "adversarial system" in our courts. Under this adversarial system a prosecutor does everything in his power to convict the defendant, the defense attorney does everything in his power to prevent a conviction, and the judge stays the hell out of the way. That is how our system is supposed to work, in theory.

3.26    This adversarial system fails, badly, when a judge puts his thumb on the scales of justice to favor one party over the other. Here, King County Government Lawyer Leroy McCullough intervened on behalf of Jacob Stone and *against* the citizens of Washington State. That is the very definition of corruption.

3.27    This adversarial system fails even more spectacularly when the *lawyers* are all working the same side of the street. In this case, The Three Fake Prosecutors advocated for the citizens of this state right up to the moment when they obtained a conviction. Upon obtaining the conviction, however, they switched sides, and have been working for Delusional Psychopath Jacob Stone ever since.

3.28    The Three Fake Prosecutors officially joined the Jacob Stone Conspiracy on November 7, 2014, when they signed off on a document fraudulently identified as a

COMPLAINT- 8

LEE ROUSSO
5306 NE 11TH COURT
RENTON, WASHINGTON 98059
TELEPHONE: (425)457-3314

"Resolution Agreement." *Exhibit D to this Complaint, Resolution Agreement, State v. Stone, November 7, 2014.*

3.29    In terms of proving that the King County Superior Court is a criminal enterprise, the Resolution Agreement is truly the Smoking Gun as it reveals four King County Government Lawyers signing off on a scheme to defraud the citizens of this state out of a jury verdict.

3.30    The effect of the Resolution Agreement was that the KCPAO, having obtained a conviction once, and just days away from obtaining a conviction again, agreed to ***DISMISS*** the Drive-by Shooting charge against Jacob Stone.

3.31    This plaintiff is familiar with KCPAO policies and procedures and knows that a Deputy Prosecuting Attorney like Patrick Hinds would not be able to dismiss a criminal charge without the approval of supervisors higher up the chain of command.  In this case, it is reasonable to infer and therefore reasonable to allege that Chief Criminal Prosecutor Mark Larson and the Elected Prosecutor, Daniel Satterberg, both approved of the decision to dismiss the Drive-by Shooting charge in advance.

3.32    This plaintiff is quite sure that in this history of this great country there has been one case, and exactly one, where a prosecutor has decided to dismiss a criminal charge *after* conviction but before sentencing.  This is something that just does not happen because it is so contrary to any known meaning of the word "prosecute."  Thus, by its unprecedented display of generosity towards Jacob Stone, the KCPAO showed that it is the most corrupt prosecuting authority this country has ever seen. *The most corrupt, ever!*

3.33    One can only imagine the conversation that occurred when the Delusional Psychopath and the Professional Backstabber showed up at the KCPAO asking for favors.  "Hey, guys,

COMPLAINT- 9

1  we would like to defraud *your client* out of a jury verdict that *you* obtained at great expense to

2  *your client.*  How about it?"

3.34    The Three Fake Prosecutors could have responded to this request by telling the

Delusional Psychopath and the Professional Backstabber to copulate themselves, or each

other.  But, instead, The Three Fake Prosecutors responded, "Sure, we would be *happy* to

defraud *our own client* out of a verdict."

3.35    Of course, when The Three Fake Prosecutors jumped into bed, literally and/or

figuratively, with the Delusional Psychopath and the Professional Backstabber they became,

themselves, Delusional Psychopaths and Professional Backstabbers.  That's just how these

things work.

3.36    Prosecutors frequently develop genuine animosity towards the criminals that they

prosecute.  So how is it that The Three Fake Prosecutors are so *in love* with Jacob Stone? Is it

his rugged good looks?  His suave demeanor?  Or maybe it's the manly way he handles his

big Glock. And when they agreed to defecate on the verdict, did The Three Fake Prosecutors

*apologize* to Jacob Stone for the inconvenience that they had caused him?  Did they offer him

a back rub and a box of chocolates?  Dinner at Canlis?  Inquiring minds would like to know.

3.37    Imagine the Seattle Seahawks winning a Super Bowl by a score of 43-8.  Imagine also

that after the game Seahawks' coach Pete Carroll handed the Lombardi Trophy over to the

Denver Broncos.  Substitute "The Three Fake Prosecutors" for "Pete Carroll" and substitute

"The Jacob Stone Case" for "The Super Bowl" and the analogy is spot-on.

3.38    If Pete Carroll threw a Super Bowl, the consequences would be severe and would

certainly include public condemnation, loss of employment, and the suspicion of bribery.  For

**COMPLAINT- 10**

LEE ROUSSO
5306 NE 11TH COURT
RENTON, WASHINGTON 98059
TELEPHONE: (425)457-3314

Corrupt Government Lawyers[4] the "consequences" for defrauding the public are fat paychecks leading to fat pensions.  No wonder everyone wants to be a Government Lawyer: the pay is great, the work is easy, and there is absolutely no accountability whatsoever!

3.39    The decision by The Three Fake Prosecutors to dismiss the Drive-by Shooting charge *after* the conviction is also ultra-bizarre in light of the fact that *all* lawyers treat winning jury verdicts as prized trophies to be polished and preserved.  Given that, a lawyer defecating on his own verdict is the legal equivalent of infanticide, and yet that did not stop The Three Fake Prosecutors from soiling their own baby.

3.40.    November 7, 2014 was also a Red Letter Day for the Jacob Stone Conspiracy.  Prior to that day, the conspiracy consisted only of Delusional Psychopath Jacob Stone, Professional Backstabbers Neil Fox and Lenell Nussbaum, and King County Government Lawyer Leroy McCullough.  But when The Three Fake Prosecutors jumped on the Jacob Stone Crazy Train it ominously raised the number of passengers from four to seven.

3.41    Thus the Jacob Stone Conspiracy managed to achieve "critical mass."   With seven lunatics on board, an Echo Chamber was formed, with the crazies just reinforcing each other's insanity, as occurs in a lynch mob.  In fact, *exactly* like a Lynch Mob, but one armed with bar cards instead of rope.  Call it a Bar Card Lynch Mob.

3.42    In addition to giving the Jacob Stone Conspiracy the critical mass that it had previously lacked, The Three Fake Prosecutors also gave the Jacob Stone Conspiracy the imprimatur of government, which is to say that the Psychotic Delusions of Jacob Stone somehow became elevated to the level of Government Policy in King County.

---

[4] Is there any other kind?

**COMPLAINT- 11**

**LEE ROUSSO**
5306 NE 11TH COURT
RENTON, WASHINGTON 98059
TELEPHONE: (425)457-3314

3.43    The so-called Resolution Agreement is truly a masterpiece of fraud.  To begin with, the Jacob Stone case had already been "resolved" with a jury verdict.  That, supposedly, is why we have jury trials in the first place; they settle disputes once and for all.  Except in King County that is, where a jury verdict is seen as a starting gate instead of a finish line.

3.44    And even if the Jacob Stone case had not already been "resolved" on November 7, 2014, it would have been "resolved" a few days later when a second jury returned a verdict of "guilty" on the Drive-by Shooting charge.

3.45    Remember, Leroy McCullough had **_ORDERED_** a second trial.  So what happened to _that_ Order?  Did the Delusional Psychopath, the Professional Backstabber and The Three Fake Prosecutors all conveniently _forget_ that the citizens of this state were still owed a trial?  And did King County Government Lawyer Leroy McCullough also conveniently forget that he had ordered same?

3.46    Given that the Jacob Stone case had already been resolved in favor of the State, why were The Three Fake Prosecutors even negotiating with the Delusional Psychopath and the Professional Backstabber?  There was literally nothing to negotiate.

3.47    The so-called Resolution Agreement is also fraudulent in that it violates the principles of Contract Law.  Specifically, the alleged contract between the Delusional Psychopath and The Three Fake Lawyers is void because it lacks "consideration," which is to say that one party to the contract did not give up anything of value.  Here, The Three Fake Prosecutors traded a jury verdict worth millions of dollars for.......*nothing*.  Accordingly, the so-called

**COMPLAINT- 12**

**LEE ROUSSO**
5306 NE 11ᵀᴴ COURT
RENTON, WASHINGTON 98059
TELEPHONE: (425)457-3314

Resolution Agreement should have been entitled "The Illegally Generous Government Giveaway."[5]

3.48    The so-called Resolution Agreement is also fraudulent because it is illegal to enter a contract to commit a crime.  That is true even if the contract is executed after the crime has been committed.  Here, The Three Fake Prosecutors agreed by "contract" that Jacob Stone could commit the crime of felony Drive-by Shooting in King County.  Seriously.

3.49    The so-called Resolution Agreement is made even more fraudulent by the fact it is illegal to enter a contract that is against Public Policy.  In the context of a criminal case, "Public Policy" and "The Jury Verdict" are identical.  (I know, shocking news for The Three Fake Prosecutors.)  That being the case, jury verdicts are non-negotiable as a matter of law.

3.50    Given that the so-called Resolution Agreement is highly illegal on its face, King County Government Lawyer Leroy McCullough had an absolute obligation to reject the Resolution Agreement and to call the case for a jury trial, a jury trial that would have ended in a conviction.  However, as with The Three Fake Prosecutors, King County Government Lawyer Leroy McCullough was so *in love* with Jacob Stone that he thought the Delusional Psychopath should be able to fire his beloved Glock whenever and wherever the urge to shoot might strike.

3.51    The defendants in this case are surely familiar with the concept of "circumstantial evidence."  They are also surely aware that the circumstantial evidence of bribery is overwhelming in this case.  There are some things in this world that do not happen without

---

[5] It would be tempting to call it a Get Out Of Jail Free Card, but it wasn't free, was it?

COMPLAINT- 13

the lubricating effect of cold, hard cash, and Massive Verdict Defecation By Government Lawyers is one of them.

3.52    The case for bribery is sealed by the fact that Delusional Psychopath Jacob Stone paid this plaintiff $8,000.00 for representation at trial, but paid $175,000.00 to avoid going to prison.   Given that Fake Lawyers and Professional Backstabbers Neil Fox and Lenell Nussbaum did no actual legal work, one can safely assume that Jacob Stone's money was used to pay bribes.

3.53    In addition to resisting actual bribes, government lawyers should avoid even the Appearance of Bribery. Here, King County Government Lawyers Leroy McCullough, Patrick Hinds, Mark Larson and Daniel Satterberg did not avoid the Appearance of Bribery, but actually went out of their way to create that appearance.  Accordingly, it is reasonable to infer, and reasonable to allege, that King County Government Lawyers Leroy McCullough, Patrick Hinds, Mark Larson and Daniel Satterberg all took large bribes to queer the verdict in the Jacob Stone case.

3.54    While bribery remains the only viable explanation for Leroy McCullough's surrender to Jacob Stone, The Three Fake Prosecutors had an even more sinister motive up their sleeves. Specifically, The Three Fake Prosecutors were motivated by a bad case of Verdict Envy.

3.55    This plaintiff participated in his first jury trial as a criminal defense lawyer in February, 2010, in the matter of *State v. Marcel Matthews*.  This plaintiff was lined up against Deputy Prosecuting Attorney Amy Montgomery, who had prevailed in hundreds of jury trials in her career.  However, in spite of facing a far more experienced attorney and some very bad facts, this former criminal defense attorney obtained a hung jury on a charge of First Degree

COMPLAINT- 14

LEE ROUSSO
5306 NE 11ᵀᴴ COURT
RENTON, WASHINGTON 98059
TELEPHONE: (425)457-3314

Burglary and Mr. Matthews was only convicted on the lesser included offense of Criminal Trespass In The First Degree, a gross misdemeanor.

3.56   By any measure, the *Matthews* case was "impossible," but that did not stop this plaintiff from winning it.  By his efforts he saved Marcel Matthews approximately ten years in prison.

3.57   During his brief career, this former criminal defense attorney prevailed in at least 23 jury trials.  *Exhibit E to this Complaint, Plaintiff's Trial Record.*  That is approximately 23 more trials than Professional Backstabbers Neil Fox and Lenell Nussbaum won over the same time frame.  In fact, it was about 23 more trial wins that any other criminal defense attorney in King County, as most criminal defense lawyers are not actually in the business of winning jury trials.  Instead, their "skills" are generally limited to filing frivolous motions and filling out plea forms.

3.58   *State v. Matthews* was not the only case where this plaintiff beat the KCPAO in court. This plaintiff prevailed in *State v. Vatne*, a theft case with very difficult facts.  This plaintiff also beat the KCPAO in *State v. Al-Mamaar*, a hate crime case where the defendant had repeatedly used the phrase "You fucking nigger" while assaulting a Somali cab driver.[6]  This plaintiff also beat the KCPAO in *State v. Craig, State v. Stalkfleet, and State v. Graham.*

3.59   The two best criminal defense attorneys this plaintiff has personally known, Tony Savage and Murray Guterson,[7] both practiced into their 80s.  Accordingly, this plaintiff, who

---

[6] The defendant was eventually convicted of Assault 2, a result that led to 90 days of work release instead of five years in prison.
[7] The plaintiff's father shared an office with Tony Savage and Murray Guterson in the 1970s.

COMPLAINT- 15

was effectively involuntarily retired at age 55, believes he was deprived of 25 years of useful employment.

3.60     Based on the record established in his brief career, it is reasonable to assume that this plaintiff would have prevailed in an average of at least 6 jury trials per year for the rest of his career.  Over 25 years that would be 150 jury trial wins, with at least half of them against the KCPAO.  No wonder the Sorry Sisters of the KCPAO wanted to get rid of Lee Rousso!

3.61     This plaintiff's ability to win jury trials may have been due to the fact that he has more public speaking experience than any other lawyer in the United States, or maybe it was just luck.  Who knows?

3.62     Of the two dozen or so trials won by this plaintiff, only a handful were such that they could have been won by a generic criminal defense attorney.  Indeed, most of these cases would not even have gone to trial with generic attorneys, but would have instead ended with guilty pleas.

3.63     In theory, the identity of the defense attorney should not be a major factor in the outcome of a jury trial.  The identity of the prosecutor should not be of much importance, either.  This is because criminal cases are so fact-specific and fact-dependent that they "try themselves."  In other words, if the Jacob Stone case had featured a different prosecutor and a different defense attorney, the result would have still been the same—two guilty verdicts.  (And, of course, the notion that Professional Backstabbers Neil Fox and Lenell Nussbaum might have won the Jacob Stone case is infinitely laughable.)

3.64     In his abbreviated career this plaintiff turned the theory upside down, which is to say that in most of his trial wins the plaintiff's trial skills were the deciding factor.  Put simply,

COMPLAINT- 16

LEE ROUSSO
5306 NE 11TH COURT
RENTON, WASHINGTON 98059
TELEPHONE: (425)457-3314

this former criminal defense attorney was much, much, much better than any of his supposed "colleagues" in the criminal defense bar.

3.65    Based on his ability to "steal" verdicts from unsuspecting prosecutors, there is no doubt that this plaintiff was the best criminal defense attorney in King County. Likewise, there is no doubt he was the best criminal defense attorney in Washington State. And, to take it the inevitable step further, it is reasonable to allege that this plaintiff was the best criminal defense attorney in the United States. And, given that this is the only country with jury trials in criminal cases, it is not much of a stretch to suggest that this plaintiff was the best criminal defense attorney in the world.[8]

3.66    But, remember, in King County it is *not a crime* for a Delusional Psychopath to shoot up a freeway in the presence of a police officer, but it *is a crime* for a criminal defense attorney to win a jury trial.

3.67    So what are the chances that the KCPAO would "accidently" kneecap the career of the one and only lawyer in the jurisdiction with the talent, skill, and determination to win jury trials in large numbers? This plaintiff, formerly a professional gambler, would say that the odds against that are astronomical.

3.68    Having removed the one criminal defense attorney who could go toe-to-toe with prosecutors and frequently outpunch them, the "mighty warriors" of the KCPAO can do all of their "battles" with the Pathetic, Weak-Kneed Plea Monkeys of the Washington Association Of (Fake) Criminal Defense Lawyers ("WACDL"). So every criminal trial in King County

---

[8] Whish would be quite a coincidence, since this plaintiff is already best in the world at something.

COMPLAINT- 17

now features a Fake Prosecutor beating up on a Fake Criminal Defense Lawyer.  Well isn't that *beautiful?*

3.69    When The Three Fake Prosecutors boarded the Jacob Stone Crazy Train they knew that four things would certainly happen.  First, Jacob Stone would *get away* with committing the crime of Drive-by Shooting even though he had committed the crime, had admitted to committing the crime, and had been convicted of committing the crime.  Second, Jacob Stone would sue his former lawyer for Legal Malpractice.  Third, the judges in the King County Superior Court would henceforth treat Lee Rousso like crap.  And, fourth, that Lee Rousso would lose his career over a case he had no measurable chance of winning.

3.70    Given that all of these results were perfectly foreseeable, it is reasonable to allege that each and every one was *intended* by the defendants.

3.71    While Intentional Career Sabotage might at first blush appear to be an unlikely explanation for the actions of the KCPAO, the lack of any plausible alternative explanation other than bribery makes Intentional Career Sabotage the leader in the clubhouse, although this plaintiff would point out that Bribery and  Bittter Revenge are not necessarily mutually exclusive.

3.72 The strongest evidence of Intentional Career Sabotage is contained in the so-called Resolution Agreement.  Remember, the KCPAO ***DISMISSED*** the Drive-by Shooting charge in spite of having a conviction *in hand.*  In "negotiating" with the Delusional Psychopath and the Professional Backstabber, The Three Fake Prosecutors were unable to even stick Jacob Stone with a misdemeanor!  Not Unlawful Discharge of a Firearm.  Not Carrying a Loaded Pistol in a Car.  Not Reckless Endangerment.  Not Reckless Driving.  Heck, The Three Fake Prosecutors could not even stick Jacob Stone with a Littering conviction!

COMPLAINT- 18

LEE ROUSSO
5306 NE 11TH COURT
RENTON, WASHINGTON 98059
TELEPHONE: (425)457-3314

3.73    While a misdemeanor resolution would have still screwed over the citizens of this state, and should not have been offered, it would have at least saved this plaintiff's career.

3.74    As provided for in his agreement with The Three Fake Prosecutors, Jacob Stone did indeed sue this former criminal defense attorney for Legal Malpractice.  In September, 2015, when he should have been at the Monroe Correctional Complex getting cozy with his handsome and well-muscled cellmate, Rooster, Jacob Stone was instead dragging this former lawyer into court.

3.75    So Delusional Psychopath Jacob Stone shoots up a freeway in the presence of a police officers, admits to doing so, is convicted of doing so, and he is somehow granted a license to sue his former defense attorney?  Welcome to the crazy, crooked and corrupt casino that is The King County Superior Court.

3.76    This plaintiff could spend 100 pages describing the horror of being dragged into court by a Delusional Psychopath and Convicted Felon.  Could, but won't.

3.77    And, as this case shows, being sued for Legal Malpractice is a career ender, even if the malpractice suit is frivolous and delusional, and even if the attorney wins in the end, as this plaintiff did.

3.78    As he marched through the King County Superior Court (remember, he should have been in prison at the time), Jacob Stone repeatedly declared, "Judge McCullough said I was innocent.  Patrick Hinds said I didn't do it."

3.79    Under our system no judge, ever, gets to decide that a criminal defendant is "innocent."  Even if Leroy McCullough wanted to play Santa Claus to Jacob Stone, the Biggest Present in his gift bag was a New Trial.

COMPLAINT- 19

3.80    Even more disturbing is the fact that Jacob Stone would list Patrick Hinds as his biggest supporter. Wait, isn't Patrick Hinds a *prosecutor?* And when he told a jury that Jacob Stone was guilty beyond a reasonable doubt, was he lying?

3.81    Other than Jacob Stone, is there a criminal anywhere in the United States who considers a judge and a prosecutor to be among his Best Friends?[9] And on this point, at least, Jacob Stone is *not* delusional. Leroy McCullough and Patrick Hinds truly are his Best Friends. They kept him out of prison, right? That's what friends are for, isn't it?

3.82    On February 17, 2017, the *Stone v. Rousso* legal malpractice case ended when a second jury found that Jacob Stone had committed the crime of Drive-by Shooting. *Exhibit F to this Complaint, Verdict Form, Stone v. Rousso.*

3.83    This, of course, is The Missing Verdict, the one that had been crapped on by The Three Fake Prosecutors in the first place, and one that they could have obtained in 2014 when the verdict would have benefited the citizens of this state, who expect that verdicts will be enforced.

3.84    And this was, literally, a case of a private lawyer being *forced* to do the work of the KCPAO.[10] Once again, if *either* Leroy McCullough *or any one of* The Three Fake Prosecutors had shown even the *slightest interest* in doing his job, Jacob Stone would have been in prison, the legal malpractice case would have never occurred, and there would be no Second Guilty Verdict.

---

[9] Jacob Stone is rumored to own female pit bulls named Patrick and Leroy. This plaintiff has not been able to verify the truth of that rumor.
[10] Slavery.

**COMPLAINT- 20**

**LEE ROUSSO**
5306 NE 11ᵀᴴ COURT
RENTON, WASHINGTON 98059
TELEPHONE: (425)457-3314

3.85    The fact that the Jacob Stone case produced two guilty verdicts but no prison time for the Drive-by Shooting runs counter to the Seventh Amendment to The Constitution of the United States, which states that no fact tried to a jury can be re-examined by another jury. This "Re-Examination Clause" of the Constitution is supposed to let everyone know that jury verdicts really are the last word.    Except in King County, that is, where every lawyer involved has treated the Stone verdict like expensive toilet paper, including the lawyers who obtained the verdict in the first place.

3.86    From its humble beginnings in 2013, The Jacob Stone Conspiracy has swelled in number from three lunatics to fifteen,[11] many of whom are King County Government Lawyers.    The Jacob Stone Conspiracy now includes *at least* Delusional Psychopath Jacob Stone, Professional Backstabbers Neil Fox, Lenell Nussbaum, Mark Knapp, Jeff Downer, Kyle Rekofke, James Lobsenz, and Mark Thomspson, and King County Government Lawyers Leroy McCullough, Patrick Hinds, Mark Larson, Daniel Satterberg, Janet Helson, Samuel Chung, and Susan Amini.[12]    And that is just the *known* members of the conspiracy.

3.87    The Jacob Stone Conspiracy is held together by its Four Guiding Principles.    First, each and every member of The Jacob Stone Conspiracy believes it is normal, even "awesome," for a convicted felon to buy his way out of a jury verdict, so they are all Verdict Defecators, Big Time.    Second, each and every member of the conspiracy subscribes to the Arm Angle Defense, which is to say they all believe that if a delusional psychopath fires a gun *horizontally* from a moving car, that constitutes Drive-by Shooting, but if the delusional psychopath somehow tilts his elbow or wrist such that he is firing "into the air," it is not a

---

[11] This plaintiff would note that Jesus Christ had his Twelve Disciples, while Jacob Stone has fourteen.  This is not to suggest that Jacob Stone is going to be "bigger than Jesus," but points out that he is off to a better start.

COMPLAINT- 21

**LEE ROUSSO**
5306 NE 11TH COURT
RENTON, WASHINGTON 98059
TELEPHONE: (425)457-3314

crime.  Third, each and every member of the conspiracy is a Delusional Psychopath, as one would truly have to be a delusional psychopath to think that Jacob Stone was in some way wrongfully convicted.  Fourth, each and every member of the conspiracy is a Complete Idiot, as only a complete idiot would believe in the Arm Angle Defense.[13]

3.88    As was foreseeable and  *intended* by the defendants, this plaintiff has suffered the complete loss of his career and now pays his bills by driving Uber and Lyft for about $20 an hour…all because the King County Superior Court is a criminal enterprise.

3.89    In addition to *intentionally* destroying this former criminal defense lawyer's career, the defendants have also caused permanent damage to the plaintiff's health.  This plaintiff now suffers from Post-Traumatic Stress Disorder and experiences debilitating anxiety on a daily basis.

3.90    In our legal system there exists, vaguely, a principle known as "prosecutorial immunity."  This principle was developed so that prosecutors could fearlessly be zealous, and possibly even overzealous, in their pursuit of *criminals,* not criminal defense attorneys.  So how zealous, exactly, were The Three Fake Prosecutors in their "prosecution" of Jacob Stone?  Well, if we assume that "rolling over and playing dead" is synonymous with "zealous prosecution," they were very zealous, indeed!

3.91    Prosecutorial immunity was never intended to protect, and does not protect, prosecutors from the foreseeable consequences that occur when they jump into bed, literally and/or figuratively, with a Delusional Psychopath.

---

[12] This is what is known as a Public-Private Partnership.
[13] Based on the plaintiff's observations, Jacob Stone is the most intelligent member of the Jacob Stone Conspiracy.  He is also the best lawyer of the bunch.

COMPLAINT- 22

LEE ROUSSO
5306 NE 11TH COURT
RENTON, WASHINGTON 98059
TELEPHONE: (425)457-3314

3.92   Even more so, prosecutorial immunity was never intended to allow a prosecutor to use the power and authority of his office to *intentionally* destroy the career of a criminal defense attorney who committed the unforgivable crime of being *too damn good!*

3.93   To recap, in the history of the United States of America, no judge has defecated on a jury verdict as violently as Leroy McCullough did in the Jacob Stone case.  And, in the history of this great country, no prosecutor outside The Three Fake Prosecutors has defecated on a jury verdict even a little.  These facts establish that the King County Superior Court is truly a criminal enterprise of unmatched historical proportions.  In a world full of corrupt government lawyers, the King County Government Lawyers are in a league of their own!

3.94   *"I lost my life in a crooked casino, and I didn't even know I was gambling at the time!"*

## IV.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION—UNLAWFUL "TAKING"

4.1   Paragraphs 1.1 through 3.94 are re-alleged and incorporated by reference.

4.2   Both the United States Constitution and the Washington State Constitution prohibit the taking of private property for public or private use without due process and just compensation.

4.3   The "private property" taken in this case was the plaintiff's interest in his own career.

4.4   The "private use" of the plaintiff's property refers to the fact that in exchange for ruining this former lawyer's career, Delusional Psychopath Jacob Stone was able to void 27 months in prison in spite of having been convicted of Drive-by Shooting.

COMPLAINT- 23

4.5     The "public use" of the plaintiff's property refers to the fact that the KCPAO has now managed to avoid dozens, perhaps even hundreds, of embarrassing trial defeats at the hands of the one criminal defense attorney in the world capable of winning jury trials in large numbers.

4.6     The Fifth Amendment states that "No person shall…be deprived of life, liberty, or property, without due process of law, nor shall private property be taken for public use, without just compensation."

4.7     Article 1, Section 16, of the Washington State Constitution states that "No private property shall be taken or damaged for public or private use without just compensation having first been paid."

4.8     This plaintiff was denied due process.  Instead, his career was decided behind closed doors by a Delusional Psychopath, a Professional Backstabber, a Corrupt Judge, and The Three Fake Prosecutors.  This plaintiff was not a party to the Jacob Stone case, was not represented (except, accidently, by The Three Fake Prosecutors), and had no right to appeal any of the illegal acts of the defendants.

4.9     This plaintiff has not received just compensation for his career that, once again, was *intentionally* targeted by the KCPAO.  Given the plaintiff's unique and exceptional ability to gather verdicts, "just compensation" in this case is an amount in excess of one billion dolars.

**SECOND CAUSE OF ACTION—CIVIL RICO VIOLATION 18 U.S.C. § 1964(c)**

4.10    By taking bribes and conspiring with a convicted felon to defraud the citizens of this state while simultaneously defrauding this plaintiff out of his career, the defendants engaged in a Pattern of  Racketeering Activities as defined in 18 U.S.C. § 1961.

COMPLAINT- 24

LEE ROUSSO
5306 NE 11TH COURT
RENTON, WASHINGTON 98059
TELEPHONE: (425)457-3314

4.11    The record shows at least two specific acts of Racketeering,: the Order Vacating Conviction and the so-called Resolution Agreement, and at least one of these acts occurred within the last ten years.

4.12    The actions of the defendants involve or affect interstate commerce.

4.13    A party damaged by a pattern of racketeering activities has a civil cause of action under 18 U.S.C. § 1984(c).

## V.    PRAYER FOR RELIEF

The plaintiff prays for the following relief:

1.      For the complete destruction of his career, including loss of earnings, loss of future earnings, loss of work enjoyment, loss of reputation, loss of fame, and loss of future fame, damages in an amount to be proven at trial, but not less than one billion dollars.

2.      Compensation for the plaintiff's attorney's fees as allowed by statute, contract, or recognized grounds of equity.

3.      Any such further or different relief as this Court shall find just.

## JURY DEMAND

Pursuant to F.R.C.P. 38, this plaintiff demands a trial by jury on all issues so triable.

July 23, 2018

/s Lee Rousso
Plaintiff, *pro se*

7/23/18

COMPLAINT- 25

LEE ROUSSO
5306 NE 11TH COURT
RENTON, WASHINGTON 98059
TELEPHONE: (425)457-3314